The Honorable, the judges of the United States Court of Appeals for the Fourth Circuit. All right, we'll proceed on the next case, which is Mann v. United States. And Mr. Gayfield, we'll hear from you first. Thank you, Your Honor. Good morning and may it please the Court. In 2011, the Manns generously agreed to donate a house on their recently purchased property to Second Chance, a 501c3 tax-exempt nonprofit. There are many nonprofits that accept donations of deconstructed building materials. But after researching their options, the Manns became excited about Second Chance's unique workforce development mission, which provides comprehensive training and education to disenfranchised Baltimore citizens who face major barriers to employment. The Manns had their house appraised, and they proceeded to execute and deliver a contract to Second Chance conveying all right, title, and interest in the improvements to the charity. Under Maryland law, the Manns' contract constructively severed the house from the underlying land, converting it to personally that was owned by Second Chance, while the Manns retained ownership rights in the underlying real property. The Manns did not retain any interest in the house, nor did they impose any restrictions, contractual or otherwise, on Second Chance's ownership rights. Well, how do we understand the contract that the Manns entered into with the contractor, which was to get the permit, demolish the old house, and build the new house, and that Second Chance understood that it would go only so far, and then turn the project over to the contractor to demolish the house? Well, I'd have two responses to that, Your Honor. Number one, whatever the Manns' other intentions were, or their other contractual relationships with the contractor, at the end of the day, that wasn't an interference in Second Chance's property rights. Second, when Second Chance deconstructs a house, it doesn't perform the demolition process anyway. So anyone who wants to rebuild a house or build a house on a previously deconstructed lot still needs a contractor to demolish the frame, the foundation. Stick back with just what you said. Can I just interject there a question? You said First Chance does not engage in the demolition of the house. Correct. What's that mean? What that means is the deconstruction process is Second Chance coming on site with their workforce development team, and these are ex-cons who are often— I understand all that. I want to understand what demolition— they do not perform the demolition of the house. What are they saying? Correct. So what happens is Second Chance takes away everything of value that it's able to extract after it employs its workforce program. It takes out the appliances, takes out the copper pipes, HVAC system, the fixtures, sometimes personal properties in there, and that was the case here, too. They take that out. They take out the cabinets, windows, doors. But you do have components that are left after deconstruction, typically. Such as what? You have the roof. You have frame. You have drywall. You can't reuse drywall, right? The chimneys. They had two chimneys or whatever it was, too, right? Chimneys are probably typically kept, although Second Chance certainly takes away brick materials, patio materials. The point is Second Chance has the option when it deconstructs a house to take away as much or as little as it wants. I understand that. You go to that side, but I'm interested in knowing when they say they don't perform the demolition, that's consistent with the fact that the contractor performed the demolition in this case. Correct. And there was an issue, or at least it was initially a government contention, that the man had gotten the benefit of a demolition contractor by way of Second Chance. And it turns out, and the testimony is clear on this, and this was a stipulated fact, demolition didn't happen by Second Chance. That's not what they do. They're not a demo company. They don't bring in a wrecking ball. They don't bring in big equipment to knock stuff down. That's not to say they didn't. That's a setup for my real question, is if Second Chance doesn't perform the demolition, but the frame and the roof is left for demolition by the mans and their contractor, then it's hard to conclude that the mans conveyed all of their interest in the house as personality to First Chance. Second Chance. Thank you, Your Honor. I have two responses to that. The first is, we're really looking now beyond the contract to what actually happened. The point is, Second Chance could have taken the house away on a flatbed if they wanted to. And look, if we were in that situation, then maybe the mans would have had to reduce the value of their donation by the equivalent of a demo service that you got. Nothing prevented Second Chance once that contract was signed from hauling the house away. They've done that before in other situations. They chose not to do it here. But don't we have to look at the actual transaction? In other words, what somebody writes on a piece of paper and says, I'm doing everything necessary to create a tax deduction. But then, in fact, that's really nothing more than a generalized statement. And the actual transaction, the real transaction involves retention of an interest in the house for demolition purposes. Well, I have two responses to that, too, Your Honor. Number one, under Section 170, the law is clear that you have to look to substantive state law. Maryland employs the objective test when it comes to interpreting your contract. And that contract that satisfied the stature of frauds here unquestionably should have been the beginning and end of the analysis. But even if you start looking beyond the contract to the records. IRS never does that. IRS always looks at the substance of transactions. They're able to call transactions shams based on looking at the substance of the transaction. Here, the deduction is allowed if the man's conveyed all their interest, not reserving some, all their interest in property. That's a requirement of Section 170, isn't it? Yes, Your Honor. It is a requirement of Section 170 to donate your entire interest. And that is what the man said. The record's clear. Mr. Mann testified to that effect that he had conveyed all interest to second chance. They could have done whatever they wanted, and they weren't restricted from doing whatever they wanted. Second chance testified to that effect. Let me ask a slightly different hypothesis, obviously a hypothetical question. If I called the Salvation Army off and said, I've got 100 shirts that I want to donate, and each one of them I think is worth a dollar, but I want you to come pick them up. And so I'm going to give you sort of an easement onto my property for 10 days. Come pick up the shirts and whatever's left, I'm going to throw away. And so Salvation Army shows up, they look at the 100 shirts, and they take five of them, because those are the only ones that they want for whatever reason. So they take those five and they leave. Can I take the $100 deduction because I gave all of those shirts to the Salvation Army, even though at the end of the day the Salvation Army only took five and I was left with the burden to destroy or dispose of the 95 that they left behind. Do I get a $100 deduction there? First answer that, and then second, once you answer the hypothetical, explain to me why you think your case is like or different from that. Well, I think this case is different because you have to remember. Answer the question, answer the hypothetical first, and then come back to why you're different. Well, I think it also depends on whether you had a contract with Salvation Army in which you had already granted them the interest in the 100 shirts. I got an oral contract. I don't care if it's in writing. So I got a written contract with Salvation Army. Do I get the $100 deduction in your view? No, because what Salvation Army has done is they have returned 95 of the shirts to you, and those shirts still unquestionably have value. Second Chance doesn't return anything of value. They take control of the structure. They employ the Workforce Development Program, Testimonies Clear. They use the entire structure. In fact, they need an entire constructed structure or their Workforce Development Program doesn't have a purpose or an existence. They then use – I mean those materials have to be – they have to be connected together. They have to be assembled, and they have to be taken apart. So let me ask that follow-up question to that then. So you say what was returned unquestionably had value in my shirts example. Correct. That's probably not correct, but okay. You say what's different here is what's returned had no value. And so let's take the Foundation as an example. You concede – I think everybody understood the Foundation wasn't going, and your claim here is that it had no value. But your appraisal, Appraisal B, actually assigns value to the Foundation, right? It takes a 17% reduction on the $27,000 that are spent on the Foundation, and that's included in the value that the man's deducted, right? Because the Foundation, which everybody knows is not going anywhere, is part of the appraisal. So on the one hand, you say what was returned was valueless, and on the other hand, your appraisal in fact says that the Foundation was 83% of $27,000. So that's – I'm having trouble putting those two together. So the problem with that analysis, Your Honor, is that the IRS here is looking beyond – we're talking about the appraisal now. We're not talking about whether the entire interest was donated via contract. And we're looking to, okay, well, what did Second Chance actually do with it? Is this a situation where Second Chance carried the entire thing away? I'm not asking what Second Chance did with it at all. You said that they had an option – I'm using your words. They had an option to take away what they want, but they were not going to take away the frame, the Foundation, the roof, or draw wall. Those are just examples you gave. And so if everybody knew that, then either, A, they didn't give away all their interest, or you're claiming those are valueless. It's got to be one of those two, and if they're valueless, your appraisal, when we look at J927, is claiming value in the very things that you are also claiming are valueless. So either they can't have value and have no value. That's the problem you've got is you're claiming value for appraisal but no value for transfer. What I'm trying to say, Your Honor, is in December of 2011, when those items are donated to Second Chance, they unquestionably have value. Second Chance runs its deconstruction program. Seven months later, it's done. It has deconstructed the house. It has destroyed the components of the house, and there is no value to the man in whatever rubble is left on a foundation or whatever roof is left. When they started, did the Foundation have value or not have value? I believe it did, Your Honor. I would have to look at appraisal fees. So on day zero, the Foundation has value. When Second Chance leaves, does the Foundation have value or no value? There's no value returned to the man, Your Honor. It just doesn't work that way. The Foundation is the same. So how did it have value on day zero and no value on day 100? Your Honor, it's no different than if you take those same 100 shirts, give them to Goodwill. Goodwill now has taken ownership of all 100 shirts. And Goodwill decides, you know what, I'm going to use 95 of these valuable – I'm going to say they're valuable vintage T-shirts here because you've got an appraisal. And despite the fact that these T-shirts are worth $5,000 collectively, I'm going to use 95 of them as racks here. And we're just going to clean our facility, and they end up being discarded. Well, of course those T-shirts have no value. But who has the burden in your hypothetical? Who has the burden to destroy, to discard those racks? Salvation Army because they own them, right? That's the point. They own them, so they must destroy them. The – I mean if you talk about a burden of demolition, that burden runs from the – the man's retained ownership in the land, and they had the burden of demolition because Second Chance didn't cart all the property away. That wasn't part of the agreement between the parties. The agreement was Second Chance, here's the property. You can do your workforce development mission. If it takes five years, it takes five years. If there's stuff left over, we understand we're going to have to demolish it because we still own the land, and we want to do something with that land. Okay. You've got some rebuttal. Thank you, Your Honor. Mr. Rennie, we'll hear from you. Good morning, Your Honors. Douglas Rennie for the United States. Intuitively speaking, the man's argument in this case doesn't make a lot of sense. They're essentially asking this court to uphold a $300,000 deduction for the purported donation of a house without the land that it was sitting on that they then paid to have demolished only a few months later. They haven't identified any cases that have upheld this type of deduction. There are several cases, however, that have rejected similar type deductions. As their own appraiser noted on page 915 of the Joint Appendix, the closest analogy is probably the donation of houses donated to fire departments for the purpose of burning down. In those cases, the Seventh Circuit and the tax court have rejected the deductions. As the Seventh Circuit said in the Rolfes case, none of the value of a house as a house was actually given away. The other problem with Appraisal B here is it was never contemplated that the charity was going to disassemble and resell the entirety of the house's component building materials. As in the Rolfes and Patel cases, the deduction of a donation of a house without the underlying land doesn't work for two primary reasons, either of which are sufficient to sustain the district court's decision here. First, the contribution was a non-deductible partial interest in violation of the restriction under Section 170 of the Code. Second, the appraisal failed to accurately describe the property and the restrictions on the gift from the man's two-second chance. It's important to note that when evaluating either of these issues, it's the taxpayer that bears the burden of showing that they were entitled to the deduction. So turning first to the partial interest issue, Section 170F3 states the taxpayer cannot deduct the donation of a partial interest in property and further specifically explains that the right to use property is considered a partial interest for these purposes, and that can't be deducted. So that brings us to the severance issue. The only way to donate a house without the land that it's sitting on is for the house to be severed, and that has to happen either physically or constructively. Physical severance, that occurs more frequently with a fixture. As the example they identify in their brief on page 15 is a door or a toilet. That's something that can be removed physically from a house without much expense or difficulty and without destroying it. Here, the house was not physically separated from the land until the man's contractor demolished it, and the parties never really contemplated that the charity was actually going to pick it up in its entirety and move it away. So that brings us to their main argument here, which is the constructive severance doctrine. Under Maryland law, the only way to constructively sever a house from the land is to record the transfer in the land records. Generally speaking, improvements are real property. The owner of the land owns the improvements. Real property has to be transferred by recorded deed. Thus, a constructive severance of an improvement from the underlying land has to be recorded. And there's clear and recent authority from the Maryland Appellate Courts on this point. The cases we've cited extensively in the briefs that the District Court relied on below, the Greater Baltimore Medical Center case and the Townsend cases from the Appellate Courts. And those courts were relying on or interpreting Section 3-101 of Maryland real property law and explained that there's a distinction between contractual ownership between private parties. Can you go to the next argument? I understand this one. I have trouble understanding the next one. Sure. And so do you mind going to that one? I just don't want you to run out of time on that one, which I find more interesting. No problem, Your Honor. The qualified appraisal issue. No, no. I mean, so I understand you to be making two arguments with respect to the transfer. One is the recording doesn't sever. The second is even if it's severed, what they gave wasn't the full interest in the severed property. In fact, they just gave a use or a limited portion of the severed property to second chance. Right. And I think part of our main disagreement with the Manns here is how they interpret it. And I believe counsel stated that you essentially have to—the contract is the beginning and end of the analysis. And that's incorrect for the purpose of federal tax law. We look more generally at, as this court has explained, at the true nature of the transactions. The formalisms don't control. We don't just accept the labels that the parties put on it. And among others, this court explained that in the BB&T case that we cited in our brief. Let me—can I ask a hypothetical to you that's slightly different? Your colleague on the other side said that the Manns had no interest in the house. That was the premise of his argument. If that was really true, would that qualify them for a deduction? So imagine the scenario where instead of what happened here, the Manns gave second chance the house in total. So they had the house, the benefits and the burdens of it, and they had a 12-month easement on the property for that house. But at the end of the 12 months, they no longer had an easement. So they could go in and take everything they wanted to out of the house, do whatever they wanted to with it. But they also had the burden, the ownership burden of destroying the house, removing it from the property at the end of the 12 months. In that scenario, would they have given all of their interest in the house such that they would be able to get a deduction? Now, how much that deduction is worth is a different question. But would that be a full transfer in your view? I don't believe so, Your Honor. Just to clarify, are you saying that who would have the burden of destroying the house at the end of the 12 months? They would own every benefit and burden. So they owned every board in the place, but they had the obligation to deal with, positively or negatively, every board in the place. They didn't get to leave behind what they didn't want. So you're essentially saying, just to clarify so I understand, if they had severed this property in a way that the courts recognized, they had the burden of paying the property taxes, they had the obligation to remove the structure, and their interest is in the structure alone, not in the underlying land, but they only have 12 months to do so? Yeah, they got an easement on my land for 12 months, but they get the whole house. Imagine it's like a famous house, and everybody really wants it. But they get the benefit and the burden of that house. They get all the trappings of ownership, not just the ability to take what they want and leave behind what they don't. Wouldn't that be a full transfer? And I get your recording issue, and I get your other issues. I mean on this particular issue, that would be a full transfer of the interest in the house. Under the scenario you're discussing, Your Honor, it sounds like that might work under probably the undivided interest exception. If it was truly severed, it's kind of akin to taking two acres out of a five-acre lot and saying, here you go, that's yours to do with what you want. That might actually work. Same thing if I did like a condo in a nine-condo building. I take one of the condos, and I give it to you, but you get all the benefits and burdens that go with it. That's the example that you'll get. My hypothetical would be akin to that. So tell me why this case is different from that. What's the argument that you're making for why the Manns didn't do that? Because they have none of the benefits and burdens here. What they have essentially is the right to come onto the property at times that are essentially dictated by the Manns. One of the things that's noteworthy here is they came at one point to remove aspects from the outside of the house. They couldn't do that until there was a demolition permit in place, which it was the Manns' obligation to go get because they are the true owners of property. So it's the Manns telling them what they can take, when they can take it. I think there's some indication in the record that Second Chance wanted to remove some of the landscaping. The Manns told them, no, they couldn't do that. And so the Manns are essentially dictating to them what they can do, what they can't do. It's not a situation where they're giving full right, title, and interest to Second Chance to do with whatever they want here. And the Manns still have the obligation to knock this house down. It was clear all along what was going to happen with this property. The Manns were going to rebuild on it. They retained that, which was probably the most significant right, which might be an issue for the hypothetical. Not the condo hypothetical, but another hypothetical where the first hypothetical discussed, which the Patel case discussed that. Let me ask you a purely legal question about constructive transfer. If I sell my house and in my sale price, I agree to retain a chandelier, a large chandelier that's a fixture in the house. At that point, there's a constructive retention of the chandelier and a transfer of the house otherwise, right? That's all constructive because there's been no severance. It's a fixture. Right. Doesn't a, doesn't constructive transfer always anticipate at some point in the future that there'll be a severance? In other words, if you don't, if you just agree to a transfer of real property, sever real property and transfer it, but it never happens, it's still real property. The constructive aspect is the contract to sever. And it seems to me at some point it anticipates a severance. Is that is that is that is that supported by the law? I believe so, Your Honor. And in most of these situations, particularly some of the cases that the man's are relying on here, they did involve situations where you have one party selling a property to another and retaining rights to remove various fixtures on the property. And in some cases, the contracts are actually contingent on them being physically separated. And the disputes are essentially between the parties to the transfer as to who owns or who has the right to remove property or the fixtures from. But it seems to me if you if we just have a contract and let's say it's even a recorded contract, it doesn't matter for my hypothetical. You have a contract which authorizes the severance of a fixture. So as to become personality, it seems to me there's constructive transfer and the real property becomes personality. But it's contingent on that actually occurring, isn't it? At some point, 130 years down the road, the chandelier has never been removed. There's got to be some kind of waiver. And that remains a fixture. I mean, we have that rule against perpetuities and all these other things that come into real property issues. I'm just I notice that the man's argues sort of abstractly that a contract to sever is, in fact, a severance and makes it personality. And my only point is it's still a fixture until it's taken. It's constructively treated as personality. But it anticipates at some reasonable point on the law that there's a severance. I think that's a fair point, Your Honor. And the cases we have from Maryland didn't even go that far because there wasn't a recorded contract there. So they didn't reach the question that you are posing, which is essentially if something that would otherwise be considered a fixture is left on the property, despite a contract saying that it could be removed, it would generally still be considered part of the real property. I think that's a fair argument, Your Honor. I don't know, though, if there is a decision in Maryland specifically addressing that. Can you explain to me my hypothetical I gave to your colleague? So if I write up a contract and record it or whatever it is that you want me to do, but I got a contract with Salvation Army to give them 100 shirts, I get appraisal to come in and say that each shirt is worth a certain amount of money. And I agree to transfer all of those to Salvation Army, but they got to come to my porch and pick them up. And I agree that whatever they don't pick up that I will destroy. I'll bear the burden of throwing it away. They show up and they only take five of the shirts. I assume you agree that I can't take a deduction for the entire 100 shirts. I'm limited to the five. But help me understand why that is. I agree with that, Your Honor. And I think what the distinction is, is what you're giving to the Salvation Army in that instance is not essentially ownership of those 100 shirts. What you're giving them is the right to come sort through those shirts and take what they want, which is not the same thing as going over to the equivalent here would be, is it the man's brought a bunch of building materials over to Second Chance's warehouse. Here's a bunch of lumber that we're donating. Here's a chandelier. This is what your colleague, I thought, very helpfully described what was going on here was an option to take away. Right. An option to take. We don't tend to think of options as being ownership. Right. So they your colleague described this as an option to take away whatever they wanted to. And which strikes me as exactly right. This is an option to take away. But whatever options were not exercised remained both the benefit and the burden of the man. Exactly, Your Honor. It's an option is not full ownership. It's a partial interest. So unless it is actually realized by looking at what was taken away, what crossed the threshold of the warehouse, which we don't know in this particular case because the record doesn't tell us, then you don't have ownership of those items. And the only thing we do know in the record is that I believe Second Chance had said they spent approximately $13,000 on the labor to conduct their salvaging. And they also stated in their 30B6 deposition that the value of what they recovered was supposedly less than what they spent. I believe that's 506. Do you agree that all these arguments that you're making had Second Chance, you know, stripped out and sold, you know, $100,000 worth of lumber to make it simple that that $100,000 worth of lumber, that could be considered a charitable contribution by the man's to Second Chance because it is personality that has been carried away and they could choose to give what's carried away in total. They're given 100% of the interest in what's being carried away. Yes, Your Honor. That would be like the five shirts that they've actually taken away that have gone back to Salvation Army and are being sold in their store. So yes. But short of that, they don't have the full ownership interest. It's an option. It's a license. It's a right to come onto the property to do something that would otherwise be a trespass and take the property away. Anything further? In closing, I would just say, Your Honor, what the man's are essentially asking for here is a federal subsidy financed by the government, other taxpayers to defray the cost of constructing their new house. The law doesn't permit it. The district court properly rejected it. We would ask that this court affirm.  Mr. Gayfield. Thank you, Your Honor. When Second Chance showed up, they took possession of the entire structure. The contract was executed December 1, 2011, and days later, the government's argument ignores the practical reality. Days later, Second Chance showed up, and they owned the structure. Yes, Second Chance had options to do things because they had all rights attendant with ownership of that structure. If Second Chance doesn't own that structure, they can't use it as a living classroom, and they're not going to be able to perform their mission. No, but they plainly could, right? I mean I'm not saying that that's what here. That statement seems to me is like totally wrong, right, is that you can have – you can be granted a license to do anything, right? So they could have been – now maybe your argument is they didn't here, but you don't really contend that they could not have been granted a license to do anything they wanted to to the house, right? This is the fire example, right? You can be given a license to use it in any way. You don't have to receive full ownership rights in order to use it as a living classroom as you hypothesized. That doesn't seem right at all. Well, first I would distinguish those license cases because the issue there is you didn't have a signed writing that satisfied statute of frauds conveying all right title interests. You had a condition that attached to it. Patel, the document, and the fire chief testified to this, gave them one day to show up and burn the house, and that was all they were permitted to do. Second chance's testimony is very different here, and I think to the extent we're going to use the record to assume that there were restrictions or conditions on that, it is contrary to the document. It's contrary to the testimony of the parties at interest here, and we do have to remember we're up here on summary judgment standard. You agreed – I mean I'm just using what you agreed to. Like you agreed that the contract did not envision a second chance taking the frame, foundation, roof, or drywall, right? Everybody knew they were going to be left behind to be destroyed, right? That's not an unusual read of the contract. That's your read of the contract. I disagree, Your Honor. The contract limited second chance in no way whatsoever. All rights in that property were transferred to second chance. It became personality at that time, and second chance owned it and was able to dispose it, use of it however it wished. There was absolute – the point is the mans had absolutely no right of recourse against second chance. If second chance picked it up and carried away, the mans can't complain, well, I thought you were going to deconstruct it. They have no right to complain about it. Actually, that's not – that's not – I'm sorry. So that's also true if it was an option, right? The mans would have no recourse. If they had an option to do anything they wanted to with the property but the mans retained the obligation for the unexercised options, then they could do anything they wanted to. I mean your distinction doesn't change if this is just an option. I mean again, I think you were – I appreciate it. I think your example of this being an option is a good one, but also the mans would not have an ability to complain whatever they did if it was an option. Well, the real test once again is what does Maryland contract and real property law say with respect to conveying all your right, title and interest in property from party A to party B? What do you need to do to comply with those standards? And that's what the contract does. Yeah, but in this case, if you were correct, then Second Chance could retain the house as a training center in perpetuity. Yet there was a clear understanding – I mean under the contract, they could still be there and the mans wouldn't be entitled to build. And the facts of the matter are that everybody entered it with the understanding that the mans were going to construct a new house there. They had already retained a contractor that included the demolition obligation, and so they knew the house was going to be demolished and made ready so that the mans could build a new house. But yet, if you're right about holding the mans to the contract, that couldn't have been done because Second Chance could have kept that house in place for 50 years. And that's what both parties testified to, Your Honor. Well, that's a litigation stance. I mean, the fact of the matter is they both understood that the mans were building a new house. They both understood there was a contractor. They both understood there was a demolition permit that the contractor would get. And they both understood that Second Chance would not take down the final portion of the house. Your Honor, once again, I think that's a distinction between what actually occurred and what contractual rights were transferred in the first instance. And I think there's a distinction between what you look at to satisfy 170 and then what you look at in order to satisfy the qualified appraisal issue. To answer a question that was put to my colleague earlier by you, Your Honor, there's no case that holds that later in Maryland, that later physical severance of a previously constructively severed and conveyed improvement must actually occur. The fact that 130 years later, setting aside whatever other rules against perpetuities, I think the owner of the conveyed improvement still has an action for conversion, assuming that contract is still valid. There's no time limitation on it. And I think to read that in misconstrues Maryland. I'm not suggesting a time limitation. I'm suggesting a condition. In other words, a constructive severance created by contract anticipates an actual severance. Now, for some reason, there is no severance. The house gets blown down by a hurricane or whatever else happens is not the issue. The issue is what constructive means. And I think constructive has to be an anticipation of an actual severance in order to be personal property to convert real property to personal property. And my response to that, Your Honor, would be that's not what Maryland law and constructive severance actually says. I do see my time is up. If there are any further questions, I'd be happy to answer. Thank you, Mr. Gatefield. At this point, we usually come down as a court, as a longstanding tradition, come down and shake your hands as in the circumstances. We can't do that, but we do it virtually here and welcome you to the court. And thank you for your arguments. We'll take this case under advisement and you'll hear from us. Court stands adjourned. Dishonorable court stands adjourned until this afternoon. God save the United States and dishonorable court.
judges: Paul V. Niemeyer, Diana Gribbon Motz, Julius N. Richardson